UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   Carol Ferri,                                                    No. 13-08-12399 JA

        Debtor.

**MEMORANDUM OPINION**

This matter is before the Court on the Chapter 13 Trustee's Motion to Dismiss ("Motion to Dismiss") filed December 21, 2009 (Docket No. 118) and on Creditor Peter Weith's Motion to Convert Debtor's Chapter 11 Proceeding to Chapter 7 Proceedings (sic) ("Motion to Convert") filed January 27, 2010 (Docket No. 127) (collectively "Motions"). The Court held a final hearing on the Motions on March 1, 2010. The hearing concluded on March 3, 2010, and the Court took the matter under advisement. Kelly P. Albers appeared for Peter J. Weith. R. Trey Arvisu, III appeared for the Debtor, Carol Ferri.[1] On December 21, 2009, Peter Weith filed an objection to the Trustee's Motion to Dismiss. (Docket No. 118).

Peter Weith and Carol Ferri both agree that grounds exist to convert or dismiss the chapter 13 case, and that the case should not remain in chapter 13. Peter Weith urges the Court to convert the case to chapter 7, and opposes dismissal so that a trustee will have the opportunity to locate and liquidate assets for the benefit of creditors. Debtor urges the Court to dismiss her bankruptcy case, and opposes conversion of her case to chapter 7, asserting that conversion would be prejudicial to creditors. After consideration of the Motions and the evidence, testimony, and applicable case law, the Court agrees that cause exists to convert or dismiss this

---

[1] Although the Trustee filed a motion to dismiss, at the preliminary hearing on her motion to dismiss she stated that she takes no position on whether the case should be dismissed or converted to a case under the chapter 7. Since the only dispute is whether conversion or dismissal is appropriate, with the Court's permission the Trustee did not appear the at final hearing on the Motion to Convert and Motion to Dismiss. The Debtor adopted the Motion to Dismiss and urged the Court to grant it.

chapter 13 case, and finds that conversion of the case to chapter 7 rather than dismissal is in the best interest of the creditors and the bankruptcy estate.

## FACTS

Debtor, Carol Ferri, filed a voluntary petition under chapter 11 of the Bankruptcy Code on July 25, 2008. On that same date, Ms. Ferri filed her Application to Employ Debtor's Counsel. (Docket No. 39). Ms. Ferri filed her statements and schedules on August 18, 2008; she scheduled assets totaling $934,387.50 and liabilities totaling $897,940.70. On January 21, 2009, Ms. Ferri filed a Motion to Extend Exclusivity which was never decided by this Court. During the pendency of the chapter 11 case, Ms. Ferri failed to file a Chapter 11 plan or a disclosure statement.

On February 9, 2009, Ms. Ferri filed six monthly operating reports for the following filing periods: August, September, October, November, and December 2008 and January 2009. Ms. Ferri's operating reports contain various unidentified cash withdrawals and payments to attorneys for legal fees and costs for which the Debtor either failed to seek approval or which were not otherwise approved by the Bankruptcy Court.

On July 19, 2009, Peter Weith filed a Motion to Dismiss or Convert the Debtor's case from Chapter 11 to Chapter 7. (Docket No.67). In response, Ms. Ferri filed a Motion to Convert the case to Chapter 13 on September 2, 2009, and the case was converted to Chapter 13 on October 7, 2009. (*See* Docket 67 and Docket 68). For the eight-month period from February 2009 through September 2009 while this case was pending under Chapter 11, and following the conversion of the case to Chapter 13, Ms. Ferri did not file any operating reports. Ms. Ferri filed her chapter 13 plan on November 16, 2009 but failed to appear at the Section 341 meeting of creditors in the chapter 13 case and failed to make any plan payments to the Chapter 13 Trustee;

consequently, the Chapter 13 Trustee filed the Motion to Dismiss. Peter Weith filed an objection to the Trustee's Motion to Dismiss on January 12, 2010 (Docket No.123), and subsequently filed the Motion to Convert.

The operating reports covering the period from August 2008 through January 2009 contain or reflect material deficiencies. They do not account for certain cash expenditures and report payment of legal expenses not authorized by the Court. They also raise a question about possible excessive expenditures for telephone service and cellular service for an individual debtor. For the six-month period covered by the monthly operating reports, Ms. Ferri disclosed payments totaling $12,811.70 for legal fees and costs, $13,273.00 of cash withdrawals, and $3,440.09 to Verizon, Qwest or Comcast. The following summarizes such expenses as disclosed in the operating reports:

**Summary of Certain Expenses Reflected in Operating Reports**

| Month | Cash Withdrawals | Legal Fees and Costs | Quest, Comcast or Verizon |
|---|---|---|---|
| 08-08 | 1,788.00[2] | 625.00[3] | 1220.00 |
| 09-08 | 1,715.00[4] | 375.00[5] | 1485.00[6] |
| 10-08 | 3,350.00[7] | | 406.00 |
| 11-08 | 3,570.00[8] | | |
| 12-08 | 1,750.00[9] | 3,246.70[10] | 652.00 |
| 01-08 | 1,100.00[11] | 8,565.00[12] | 397.09 |

---

[2] Reported as consisting of $728 for food and $1,060.00 for maintenance.
[3] Reported as consisting of $125 for Court of Appeals and $500.00 for attorney Helen Bennett.
[4] Reported as consisting of $900.00 for maintenance, $50.00 for "miscellaneous" and $750.00 for a medical expense.
[5] Which professionals were paid these funds is not disclosed.
[6] Includes reported payments to Verizon totaling $922.00 for August and September, 2008.
[7] No accounting of the use of the funds is provided.
[8] Reported to include $1,120.00 for a maintenance expense. No accounting of the use of $2,450.00 of the funds is provided.
[9] No accounting of the use of the funds is provided.
[10] $1,750.00 of the funds were reportedly used to pay "El Paso legal fees."
[11] Reported to consist of $800.00 for legal fees, $200.00 for misc., and $100.00 for food.
[12] $1,750.00 of the funds were reportedly used to pay "El Paso legal fees". Includes $800 also included in the cash withdrawal column.

-3-

In addition to the failure to account for various cash withdrawals, the operating reports are deficient in other respects. No bank statements are attached to the operating reports. The October 2008 operating report discloses expenditures of $500.00 for food, clothing and hygiene (*see* MOR-1), but the itemized bank account disbursement journal fails to specifically identify any food expenditures (*see* MOR-2). The November 2008 operating report discloses food expenditures of $500.00 (*see* MOR-1), which appears to contradict the $100.00 expense for food listed on the itemized bank account disbursement journal (*see* MOR-2).

On May 15, 2009, Ms. Ferri filed an application to employ L. Helen Bennett (Docket No. 61). Except in connection with her retention of Mr. Arvizu as her bankruptcy counsel, Ms. Ferri did not file any other applications to employ attorneys or other professionals. No order approving Ms. Ferri's retention of L. Helen Bennett was entered. The operating reports filed in the chapter 11 phase of this case reflect payments to Ms. Bennett and other professionals not approved by the Court.[13]

Ms. Ferri testified at the Section 341 Meeting of Creditors held while her case was pending under Chapter 11 that her son, Gino Ferri, handled all of her affairs, paid all the bills, and managed all of her properties.[14] At a Rule 2004 Examination taken on May 11, 2009, Ms. Ferri testified that her son, Gino Ferri, "[does] her bookkeeping and [has] taken care of all my bills for the last 30-plus years."[15] She further testified that they have a "domestic relationship" as mother and son and share expenses.[16] She testified that she "has not looked at her checkbook

---

[13] At a Rule 2004 examination, Ms. Ferri testified that legal fees were paid to one of the lawyers or one of the courts, but was unable to say to whom or for what purpose. Ferri Examination at p. 57, lines 6-13; *id.* at p.61, lines 12-15. When questioned about a payment to Jerold Kaufman on or about December 22, 2008 in the amount of $1,000, Ms. Ferri testified that she did not know what was paid. *Id.* at p. 59, lines 22-25.
[14] Transcript from Meeting of Creditors, held August 21, 2008, p.9, line 4.
[15] Ferri Examination at p.9, lns. 7-10.
[16] *Id.* at p.19-20

-4-

for sometime" and does not write any of her own checks.[17] When questioned about specific expenditures, Ms. Ferri repeatedly testified that she did not know what the various expenditures listed in her operating reports represented. She could not identify what the withdrawals of cash from her account were used for, testifying simply that the withdrawals were "to possibly pay bills . . . [because] … people won't take our checks anymore." She otherwise stated that she did not have "…[any] specific knowledge" where the money is going.[18]

Mr. Weith, who seeks to convert the Debtor's case to chapter 7, is the only creditor expressing a preference between conversion and dismissal.

## DISCUSSION

Conversion or dismissal of a Chapter 13 case is governed by 11 U.S.C.§1307(c), which provides:

> Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause…

11 USC 1307(c).

Section 1307(c) contains a nonexclusive list of grounds that constitute cause for conversion or dismissal.[19] The language in section 1307(c) parallels the language contained in section 1112(b) which governs dismissal and conversion in chapter 11 cases.[20] Both 11 U.S.C. §1307(c) and 11

---

[17] *Id.* at p.25
[18] *Id.* at p. 53
[19] *See In re Alexander,* 363 B.R. 917, 925 (10th Cir. BAP 2007)(stating that "'[c]ause' is further defined [in §1307] by a non-exclusive list of eleven factors."); *In re Orawsky,* 387 B.R. 128, 137 (Bankr.E.D.Pa. 2008)(recognizing that the statutory grounds for dismissal or conversion set forth in §1307(c) are not exclusive); 9 COLLIER ON BANKRUPTCY ¶1307.04 and n.33 (15th ed. rev. 2007)(noting that the use of the term "including" in §1307(c) indicates that the list is not exclusive).
[20] 11 U.S.C. §1307 provides, in relevant part:
  Except as provided in subsection (e) of this section, on request of a party in interest or the United States Trustee and after notice and a hearing the court may convert a case under this chapter to a case under

U.S.C. §1112(b) establish a two-step process for considering the question of conversion or dismissal.[21] The court first determines whether cause exists; and if cause is found the court considers whether conversion or dismissal is in the best interest of creditors and the estate.[22]

The Debtor concedes, and the Court agrees, that there is sufficient cause to either dismiss or convert the Debtor's chapter 13 case under 11 U.S.C. § 1307(c), including the Debtor's failure to commence making plan payments to the Chapter 13 Trustee and her failure to appear at the Section 341 meeting of creditors. *See* 11 U.S.C. § 1307(c)(4). Further, the Debtor failed to file any operating reports during the chapter 13 phase of her case. Having established cause, the Court will consider whether dismissal or conversion is in the best interest of creditors and the estate.

---

chapter7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . .

11 U.S.C. § 1307(c).

Section 1112(b) provides, in relevant part:
Except as provided in paragraph (2) of this subsection, . . . on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. §1112(b).

[21] *See In re Nelson,* 343 B.R. 671, (9th Cir. BAP 2006)(stating that § 1307(c) and §1112(b) "establish a two-step analysis for dealing with questions of conversion and dismissal" so that once cause has been demonstrated, "a choice must be made between conversion and dismissal based on the 'best interest of creditors and the estate.'")(citations omitted); *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.),* 14 F.3d 240, 242 (4th Cir. 1994)(stating that a motion filed under §1112(b) "invokes a two-step analysis, first to determine whether 'cause' exists either to dismiss or to convert the Chapter 11 proceeding to a Chapter 7 proceeding, and second to determine which option is in "the best interest of creditors and the estate.'")(quoting *In re Mechanical Maintenance, Inc.,* 128 B.R. 382, 386 (E.D.Pa. 1991)); *In re Helmers,* 361 B.R. 190, 196 (Bankr.D.Kan. 2007)(once cause is shown under 1112(b), the court considers whether dismissal or conversion is in the best interest of creditors and the estate).

[22] *See, Blaise v. Wolinsky (In re Blaise)*, 219 B.R. 946, 950 (2nd Cir. BAP 1998)(stating that, "the consideration whether to dismiss or convert under section 1307(c) requires the court further to determine whether the best interest of the estate and its creditors dictate conversion or dismissal.")(citation omitted).

-6-

The Bankruptcy Code does not provide criteria for determining whether to dismiss or convert a Chapter 13 case upon a finding of cause, other than consideration of what is in the "best interest" of creditors and the bankruptcy estate.[23] The decision to convert or dismiss falls within the sound discretion of the court.[24] Because the language of 11 U.S.C. § 1307(c) mirrors the language contained in 11 U.S.C. § 1112(b), factors relevant to the question of whether dismissal or conversion is in the best interests of creditors and the estate in a chapter 11 case are also helpful to the Court's consideration of conversion versus dismissal within the context of a chapter 13 case. Factors considered by courts when considering whether dismissal or conversion under 11 U.S.C. § 1112(b) is in the best interest of creditors and the estate include:

> whether some creditors received preferential payments, whether equality of distribution would be better served by conversion rather than dismissal; (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted; (3) whether the debtor would simply file a further case upon dismissal; (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors; (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise; (6) whether any remaining issues would be better resolved outside the bankruptcy forum; (7) whether the estate consists of a "single asset,"; (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests; (9) whether a plan has been confirmed and whether any property remains in the estate to be administered; and (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.
>
> *In re Helmers,* 361 B.R. 190, 196-197 (Bankr.D.Kan. 2007)(quoting 7 Collier on Bankruptcy, ¶ 1112.04 [6] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. Rev. 2005). *See also In re Veltmann,* 2007 WL 4191736 (Bankr.D.N.M. 2007)(applying same factors).

---

[23]*See, Helmers,* 361 B.R. at 950 (noting that "[t]he Code does not define the phrase or set forth what factors to consider in determining what is in the best interests of creditors and the estate."). *See also, In re Jensen*, ___ B.R. ___, 2010 WL 958065, at *3(Bankr.S.D.N.Y, 2010)("The Court may convert the case rather than dismiss it if conversion is in the best interests of creditors and the estate."); *Gaudet v. Kirshenbaum Inv. Co. (In re Gaudet)*, 132 B.R. 670, 676 (D.R.I.1991) (the court must consider what is in the best interests of creditors and the estate); *In re Cutillo*, 181 B.R. 13, 14 (Bankr.N.D.N.Y.1995) (the decision should be "based upon consideration of what is in the best interest of creditors and the estate" and the analysis should be undertaken on a "case-by-case basis").

[24] *See, In re Armstrong*, 303 B.R. 213, 218 (10th Cir.BAP 2004); *Blaise*, 219 B.R. at 950 (stating that a bankruptcy court's decision to convert a Chapter 13 case to Chapter 7 for cause is reviewed for an abuse of discretion); *In re Smith*, 85 B.R. 729, 730 (Bankr. E.D.Va.1988)(citing case law holding that Congress intended dismissal under 1307(c) to be discretionary).

It is appropriate for the Court also to consider the preferences expressed by creditors for either dismissal or conversion when determining whether to dismiss or convert a debtor's bankruptcy case,[25] although the Court must make its own determination of the best interests of the creditors and the estate. Evidence that the debtor has proceeded in bad faith, or has been playing fast and loose with the requirements under the Bankruptcy Code, is a factor supporting conversion rather than dismissal.[26]

Ms. Ferri has enjoyed the protection of the automatic stay for some nineteen months while her creditors were held at bay, yet she failed to appropriately discharge her duties as a debtor in possession. She filed operating reports for the first six months of her chapter 11 case all at once, instead of monthly, and the operating reports she filed contain unaccounted for cash withdrawals, evidence of payments to professionals not approved by the Court, and other deficiencies. Further, no operating reports were filed for an extended period; therefore, no accounting of estate income and expenses has been made for that period. It is in the best interest of creditors and the estate for an independent chapter 7 trustee to determine whether to seek to recover unauthorized funds expended in furtherance of post-petition transactions.

Debtor argues, *inter alia,* that the Court should dismiss rather than convert Debtor's case because dismissal will simply return creditors to their former positions, that there are no viable, non-exempt assets to be administered in a Chapter 7 case, and that any remaining collection efforts are best pursued through garnishment under state law. Counsel for the Debtor further represented that he would not file another bankruptcy case on behalf of the Debtor if this case

---

[25] *See* Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §312.1 at ¶4, Sec, Rev., June 10, 2004., www.Ch13online.com (noting that "[b]ankruptcy courts consider the preferences expressed by creditors in making the decision whether to convert or dismiss under § 1307(c).").

[26] *See, e.g., In re Brock,* 365 B.R. 201, 213 (Bankr.D.Kan. 2007)(concluding that best interest of creditors would be better served by converting case rather than by dismissal where there were "many questions about the degree and extent of the debtor's assets."); *Blaise,* 219 B.R. at 950 (affirming bankruptcy court's decision to convert rather than dismiss Chapter 13 case where debtor failed to disclose assets and sole property of the estate without court approval).

were dismissed. The Court is not persuaded that these factors are sufficient grounds to dismiss rather than convert the Debtor's case. The operating reports, together with the Debtor's own testimony, demonstrate that the Debtor has failed to provide a sufficient accounting of her business affairs during the pendency of this case for the Court to make any of those determinations regarding assets of the estate and how creditors may best collect their claims. Based on the foregoing, the Court concludes that conversion, rather than dismissal, is in the best interest of creditors and the estate.

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Rule 7052, Fed.R.Bankr.P. An appropriate order will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on Docket Date: April 6, 2010

Copies to:

R Trey Arvizu, III
PO Box 1479
Las Cruces, NM 88004-1479
*Attorney for Debtor*

Kelly P. Albers
Law Office of Kelly P. Albers, P.C.
650 Montana Avenue, Suite D
Las Cruces, NM 88001
*Counsel for Creditor Peter J. Weith*